IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THOMAS E. PERSINGER,

      Plaintiff,                        Case No. 2:19–cv–4583
                                            Judge Edmund A. Sargus, Jr.
    v.                                       Magistrate Judge Kimberly A. Jolson

INDUSTRIAL FABRICATORS, INC.,

      Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Industrial Fabricators, Inc.'s Motion for Summary Judgment. (ECF No. 13.) The parties have fully briefed the motion and it is ripe for decision. (ECF Nos. 17, 19.) For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

### I.

This case arises out of Plaintiff Tom Persinger's termination of employment with Defendant Industrial Fabricators, Inc. Industrial Fabricators is a manufacturer of metal fabrications located in Westerville, Ohio. (Landig Aff. ¶ 3.) Mr. Persinger worked for Industrial Fabricators as an office manager from October 2000 until he was fired in July 2019. (Landig Aff. ¶ 5.) During his employment, Mr. Persinger was responsible for overseeing accounts receivable and accounts payable and reported to his boss and owner of Industrial Fabricators, Fred Landig, Jr. (Persinger Dep. at 22:6–12, 29:8–14.)

     A. **Persinger's Statements About Employee's Termination**

On June 14, 2019, Industrial Fabricators terminated an employee, allegedly for accumulating over 80 attendance points in violation of company policy. (Landig Aff. ¶ 25.) Mr.

Persinger avers that the employee was terminated for submitting doctor's notes that appeared fake. (Persinger Dep. 143:9–19.) Persinger believes this because the day the employee was fired, the production supervisor showed Mr. Persinger two doctors excuses from the employee and said the signatures on the excuses looked "bogus." (*Id.* at 139:12–18.) Mr. Persinger could not tell if the signatures were forged and suggested the supervisor verify the doctor's excuses by checking whether the dates matched incoming Explanation of Benefits forms (EOBs), which might arrive in a few days. (*Id.* at 140:4–12, 150:15–20.) Later that day, the supervisor fired the employee and police escorted the employee out of the building. (*Id.* at 140:16–22.)

Over the next five weeks, Mr. Persinger and his boss, Mr. Landig, had three conversations about the employee's termination. First, on June 17, three days after the employee's termination, Mr. Persinger told Mr. Landig that the employee was fired and escorted out of the building by police. (*Id.* at 141:19–143:4.) Mr. Persinger "thought Mr. Landig should know that the employee was escorted out of the building." (*Id.*) Mr. Landig responded to Persinger that it was an at-will state so he could fire anyone at any time and that the employee had too many attendance points. (*Id.*) Mr. Persinger replied, "that's not why he was fired, he was fired because of the bogus doctor's excuses." (*Id.*) There was no discussion of discrimination during this conversation. (*Id.* at 179:15–24.) Neither Mr. Landig nor Mr. Persinger knew the employee claimed to be disabled during this conversation. (Landig Aff. ¶ 32; Persinger Dep. 146:18–24.)

In late June, Persinger saw incoming EOB forms for the employee's insurance claims and "put two and two together" that an office rumor that someone had cancer must be about the fired employee. (Persinger Dep. 146:18–24.) Persinger did not read the EOBs or match the EOB dates

2

to the employee's doctor's excuses but wondered if they would prove that the doctor's excuses were real. (*Id.* at 150:9–14.)

The second conversation occurred on July 18, about a month later, when the fired employee sent a demand letter to Industrial Fabricators threatening to sue for wrongful termination. (*Id.* at 180:13–19; Landig Aff. ¶ 31.) Mr. Landig showed Persinger the demand letter and told him that the employee was trying to "extort" money from the company. (Landig Dep. 7:17–22.) Mr. Persinger responded that the employee had a "legitimate case," and that Industrial Fabricators "would lose if the employee brought the case." (Landig Dep. 8:10–16, 9:3–6.) Mr. Persinger believed the employee "had a case" because the supervisor incorrectly believed the doctor's notes were "bogus" and fired the employee for it. (Persinger Dep. 172:16–24.) Mr. Persinger advised Mr. Landig again to check the employee's EOBs to verify the doctor's notes. (Landig Dep. 9:17–24.)

Finally, on Friday, July 19, Persinger told Landig that he "felt that with the EOBs coming in and proving that the reason we terminated him was proved to be bogus that [the employee] would probably have a case against the company for wrongful termination." (Persinger Dep. 147:2–7.) In his deposition, Mr. Persinger testified that Mr. Landig seemed very angry because of these statements. (Persinger Dep. 156:8–23.)

### B. Persinger's Alleged Harassment

Over the course of his employment, Mr. Persinger was directed to improve his interpersonal skills with coworkers several times in yearly performance reviews. (Def. Mot. Summ. J., Ex. A1–A6, hereinafter "Def.'s Mot.") Specifically, Persinger had issues with a bookkeeping clerk and complained to Landig at least twice a month that the clerk was making Persinger's job difficult. (Persinger Dep. 98:7–23, 56:14–16.) On Friday, July 19, the business day

before he was fired, Mr. Persinger took photos of the bookkeeping clerk at the clerk's workspace to use as evidence of poor job performance and disorganization. (Landig Aff. ¶ 17; Persinger Dep. 105:24–108:24.) Landig thought Persinger's taking pictures was "very bizarre and disturbing behavior of an employee harassing another employee." (Landig Depo. 16:16–19.) According to Industrial Fabricators, Mr. Persinger also sent emails to clients criticizing the clerk, although Persinger presents evidence that he did not send such emails. (Def.'s Mot., Ex. E.)

Under Industrial Fabricator's disciplinary policy, employees may be immediately discharged for committing "workplace violence," which includes "an unwelcome physical or psychological form of harassment, threat, stalking behavior, or attack that causes fear, mental or physical harm, or unreasonable stress in the workplace." (Def.'s Mot., Ex. D.) Industrial Fabricators avers that Persinger committed workplace violence by taking photographs of and harassing the clerk and was therefore subject to immediate termination. (Def.'s Mot. at 4.)

**C. Persinger's Termination**

Industrial Fabricators fired Mr. Persinger on Monday, July 22, 2019, citing "gross misconduct" and "harassment" of the clerk. (Landig Aff. ¶ 5; Def.'s Mot., Ex. C.) Mr. Landig said, "I'm letting you go for harassment" and Mr. Persinger told a coworker while walking out that he was fired for "harassing [the clerk]." (Persinger Dep. 148:3–16.)

Mr. Persinger, however, alleges that he was terminated for making statements to Mr. Landig that the employee who was fired for submitting allegedly fake doctor's notes had a legitimate case against the company for wrongful termination and would likely win. (Pl.'s Response to Def.'s Mot. Summ. J. at 2, ECF No. 17, hereinafter "Pl.'s Resp.") Mr. Persinger brings this suit claiming he was fired for retaliating against Industrial Fabricator's wrongful termination of an employee because of the employee's disability, in violation of the ADA. (*Id.*)

4

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III.

Industrial Fabricators moves for summary judgment on Mr. Persinger's state and federal retaliation claims. Ohio's disability discrimination law "parallels" the federal ADA "in all relevant respects[.]" *Lockhart v. Marietta City Sch.*, No. 2:19–cv–2935, 2020 WL 6782209, at *9 (S.D. Ohio Nov. 18, 2020) (citing *Belasco v. Warrensville Heights City Sch. Dist.*, 634 F. App'x 507, 514 (6th Cir. 2015)). The Court therefore applies federal law to Persinger's parallel state claim, and the two claims "rise and fall together." *See id.*

The retaliation provision of the ADA prohibits an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a); *see also* Ohio Rev. Code. § 4112.02(I) (nearly identical language). The alleged violation need not be unlawful under the ADA, the plaintiff must only have a good faith, reasonable belief that it is unlawful under the ADA. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312–1313 (6th Cir. 1989); *Kimbrough v. Cincinnati Ass'n for Blind & Visually Impaired*, 986 F. Supp. 2d 904, 917 (S.D. Ohio 2013).

Establishing a prima facie case of ADA retaliation is not an onerous burden. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). The plaintiff must present evidence that: "(1) the plaintiff engaged in protected activity; (2) the employer knew of that activity; (3) the employer took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Sharp v. Waste Mgmt., Inc.*, 47 F. Supp. 3d 584, 600 (S.D. Ohio 2014) (citing *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th

Cir. 2014)). If the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for taking the adverse employment action. *Kimbrough v. Cincinnati Ass'n for Blind & Visually Impaired*, 986 F. Supp. 2d 904, 916 (S.D. Ohio 2013). If the defendant meets its burden, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered reason is pretext for unlawful retaliation. *Id.*

In this case, Industrial Fabricators moves for summary judgment on the grounds that: (1) Persinger did not engage in a protected activity; and (2) Persinger cannot establish that he was fired for engaging in a protected activity because Industrial Fabricators fired him for harassing a coworker. (Def.'s Mot. at 10.)  Mr. Persinger responds that he engaged in a protected activity by opposing an unlawful act when he told his boss, Mr. Landig, that an employee was fired for submitting fake doctors notes rather than for violating the company attendance policy, and that the employee had "a legitimate case" against Industrial Fabricators. (Pl.'s Resp. at 16.)  Mr. Persinger also argues there are genuine issues of fact as to whether he was terminated for his statements to Landig about the employee or harassing his coworker. (*Id.* at 18.)

Viewing the evidence in the light most favorable to Mr. Persinger, no reasonable jury could conclude that he engaged in a protected activity under the ADA because Persinger's statements did not oppose the employee's termination based on disability discrimination. To receive protection, the plaintiff's "expression of opposition must concern a violation of the [statute]." *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (applying analogous ADEA opposition clause). A "vague charge" of discrimination is insufficient to constitute opposition to an unlawful employment practice.  *Fox*, 510 F.3d 587, 591 (6th Cir. 2007) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989). At the same time, an accusation

7

need not be lodged with "absolute formality, clarity, or precision" if the language, "in a specific factual context," conveys that the statement's purpose is to oppose discrimination. *Stevens v. St. Elizabeth Med. Ctr., Inc.*, 533 F.App'x 624, 631 (6th Cir. 2013); *see also Crawford v. Chipotle Mexican Grill, Inc.*, 773 F. App'x 822, 827–828 (6th Cir. 2019) (finding the context suggests plaintiff's statement opposed racial discrimination where an African American employee accused her Hispanic manager of "discriminating against" an African-American co-worker, the employee had complained to the manager in the past about favoring Hispanic workers, and the manager responded that she was only sticking up for her coworker "because he was black.")

  A plaintiff's "complaint or disagreement that is essentially about management decisions" is not protected activity. *Kimbrough*, 986 F. Supp. 2d at 917. *Kimbrough* is instructive. In that case, the plaintiff worked as a low vision services manager at the Cincinnati Association for Blind and Visually Impaired. *Id.* at 906. Employed for over 20 years with the Association, the plaintiff's performance reviews recurringly expressed dissatisfaction with her negative attitude and interpersonal communication skills. *Id.* at 906–07. One of the plaintiff's subordinates underwent open heart surgery and took FMLA leave for several months. *Id.* at 909. The employee wanted to return to work on a reduced schedule using sick leave, but the employer refused because the doctor's note cleared the employee to return to work without restrictions. *Id.* The plaintiff was copied on emails discussing the employee's return to work and responded in the chain stating: "I find it very insensitive and unrealistic to state that there is no medical justification for use of sick leave for an employee who is still recovering from open heart surgery! . . . Do I now need medical statements, HR and executive director approval for sick leave?" *Id.* at 911. Following the plaintiff's email and conduct at a meeting regarding the situation, the Association warned the plaintiff that improvement of her professionalism was mandatory and that any further incidents

8

would result in termination. *Id.* Six months later, the plaintiff was terminated after an unrelated incident. *Id.*

After filing a charge with the EEOC, the plaintiff filed suit alleging (among other things) retaliation under the ADA and Ohio law. *Id.* at 915. She claimed that the Association retaliated against her for failure to accommodate an employee's disability under the ADA. *Id.* This Court disagreed, holding that the plaintiff did not engage in oppositional conduct under the ADA. *Id.* at 917. In so holding, the Court reasoned that the plaintiff was "questioning [the Association's] policy that [the employee] obtain a doctor's statement in order to use her accrued sick time to work a reduced schedule"—not opposing discrimination under the ADA. *Id.* Equivalently, telling a boss that "it is not right to reject a valid doctor's note" when an employee returns from an illness is not a protected activity under the ADA without more. *Asamoah v. Amazon.com Servs.*, No. 2:20–cv–3305, 2020 U.S. Dist. LEXIS 229513, at *14–16 (S.D. Ohio Dec. 7, 2020). To hold otherwise would turn "subjective disagreement over internal employer leave policies into ADA-protected activity." *Kimbrough*, 986 F. Supp. 2d at 917; *see also Booker*, 879 F.2d at 1313.

This case is analogous to *Kimbrough* and *Asamoah*. But Persinger's statements are even less compelling. In their first conversation, on June 17, 2019, Mr. Persinger informed Landig that "[the employee] was fired" and "escorted out of the building by police." (Persinger Dep. 141:19–143:4.) Mr. Landig said the employee was fired for accumulating too many attendance points, and Persinger countered, "that's not why [the employee] was fired, he was fired because of the bogus doctor's excuses." (*Id.*) Here, unlike the *Kimbrough* plaintiff who criticized the company's decision to reject the doctor's notes as "unsensitive and unrealistic," and the *Asamoah* plaintiff who said the decision "is not right," Mr. Persinger does not vocally disagree with the supervisor's decision to reject the doctor's notes. His statement— "that's not why he was fired"—merely

9

attempts to expose that the employee was fired for the fake doctor's notes rather than violating the attendance policy. Furthermore, even if these statements can be read to oppose the employee's termination, Persinger did not oppose based on disability discrimination because he did not know the employee was disabled or sick at this time. *See Kimbrough*, 986 F. Supp. 2d at 917 (plaintiff "must have a reasonable, good faith basis to believe that the practice in question is unlawful" under the ADA).

The second and third conversations between Mr. Persinger and Mr. Landig, when viewed in a light most favorable to the plaintiff, also lack statements of discrimination or a factual context suggesting Persinger was speaking about discrimination. Mr. Persinger's July 18th statement telling Mr. Landig to "look at the EOBs" to verify the employee's doctor's notes and his statements that the employee "has a legitimate case" against the company and the company "would lose if the employee brought the case" does not reference discrimination and the factual context suggests Persinger believes the employee was fired for lying and forging doctor's notes, not for being disabled. (Landig Dep. 8:10–16, 9:3–6.) Persinger admitted in his deposition that he only believes that the employee has a case against Industrial Fabricators because the company fired the employee for submitting fake doctor's notes when the notes were in fact real. (Persinger Dep. 172:16–24.) Firing someone based on a mistaken, but genuine, belief that the doctor's notes are fake is not discriminatory under the ADA. And objecting to the company's management decision to fire someone for submitting fake doctor's notes is not the same as objecting to a company firing someone for their illness or disability, or for submitting doctor's notes at all. *See Asamoah*, 2020 U.S. Dist. LEXIS 229513 at *14–16.

At most, the evidence shows disagreement with how the supervisor handled the employee's termination and a belief that the employee "would probably" have a case against Industrial

Fabricators for "wrongful termination" if the doctor's notes were not forged.  No reasonable jury could draw the inference from this statement that Persinger's statements opposed the employer actions based on unlawful disability discrimination. The Court declines to address further elements because the plaintiff cannot show a genuine issue of material fact as to whether he engaged in a protected activity.

### IV.

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment on all claims.  (ECF No. 13.)  The Clerk is directed to enter judgment and to close this case.

**IT IS SO ORDERED**.

**9/21/2021**                                                                                           **s/Edmund A. Sargus, Jr.**
**DATE**                                                                                                     **EDMUND A. SARGUS, JR.**
                                                                                                                     **UNITED STATES DISTRICT JUDGE**